[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-15229
Non-Argument Calendar
_____

Agency No. A200-194-875


CARL ROBERT MARCELUS,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____


(August 28, 2015)

Before HULL, JULIE CARNES and JILL PRYOR, Circuit Judges.

PER CURIAM:

Carl Robert Marcelus seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum.[1]  Marcelus, a citizen of Haiti, claimed past persecution and a well-founded fear of future persecution by a group of kidnappers who targeted him after he reported them to Haitian authorities.  The IJ and the BIA denied Marcelus's applications based on a finding that he was not credible.  After review, we deny Marcelus's petition for review.

On appeal, Marcelus contends that the IJ's adverse credibility finding is not supported by substantial evidence.[2]  An asylum applicant bears the burden of establishing, with specific and credible evidence, either past persecution or a "well-founded fear" of future persecution on account of a statutorily protected ground. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005); 8 C.F.R. § 208.13(b).  While an applicant's credible testimony may be sufficient to sustain his burden of proof, even without corroborating evidence, Immigration and

---

[1]Marcelus's petition for review challenges only the denial of his asylum claim, makes only a few passing references to his claim for withholding of removal, and does not mention at all his request for relief under the United Nations Convention Against Torture ("CAT"). Accordingly, Marcelus has abandoned his claims for withholding of removal and CAT relief, and we do not address them.  See Kazemzadeh v. U.S. Att'y Gen., 577 F.3d 1341, 1352 (11th Cir. 2009) (deeming abandoned a CAT claim to which the petitioner's brief made only passing reference).

[2]Because the BIA agreed with the IJ's credibility finding, we review the decisions of both the IJ and the BIA.  Mohammed v. U.S. Att'y Gen., 547 F.3d 1340, 1344 (11th Cir. 2008).  The IJ's credibility finding is a factual finding that we review for substantial evidence.  Id.  Under the substantial evidence test, we will reverse an IJ's credibility finding only if the record compels it. Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1286-87 (11th Cir. 2005).

Nationality Act ("INA") § 208(b)(1)(B)(ii), 8 U.S.C. § 1158(b)(1)(B)(ii), the weaker the applicant's testimony, the greater the need for corroboration. Yang v. U.S. Att'y Gen., 418 F.3d 1198, 1201 (11th Cir. 2005). Conversely, where the applicant relies solely on his testimony, an adverse-credibility determination may support denying his application. Lyashchynska v. U.S. Att'y Gen., 676 F.3d 962, 967 (11th Cir. 2012). However, if the applicant produces evidence other than his testimony, the IJ and the BIA must consider this evidence as well. Forgue, 401 F.3d at 1287.

In making an adverse credibility finding, the IJ must be explicit and offer "specific, cogent reasons" for the finding. Forgue, 401 F.3d at 1287. Pursuant to 8 U.S.C. § 1158(b)(1)(B)(iii), as amended by the REAL ID Act, the IJ, in evaluating credibility must consider the "totality of the circumstances," including (1) the applicant's demeanor, candor, or responsiveness; (2) the inherent plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; (5) the consistency of the statements with other record evidence; and (6) any other relevant factor. INA § 208(b)(1)(B)(iii); 8 U.S.C. § 1158(b)(1)(B)(iii). "Once an adverse credibility determination is made, the burden is on the applicant alien to show that the IJ's credibility decision was not supported by 'specific, cogent reasons' or was not based on substantial evidence." Forgue, 401 F.3d at 1287.

3

During his hearing, Marcelus testified that in 2005, while working as a bus driver in Saint-Marc, a group of men boarded his bus with a small boy that they appeared to have kidnapped. The kidnappers held a gun to Marcelus's head and ordered him to drive the bus away. When Marcelus was unable to start the bus, the kidnappers beat him up and used tear gas on him. During the attack, Marcelus's sister, who was also on the bus, was shot and killed by the kidnappers. The police intervened, and Marcelus was taken to a hospital, where he was treated for 33 days.

After being released from the hospital, Marcelus gave a statement before a judge, which resulted in a police investigation that identified three of the kidnappers. Police arrested the three men, but they were immediately released. Afterward, the kidnappers began knocking on Marcelus's door and asking for him because they wanted to kill him. Marcelus and his family fled Saint-Marc, with Marcelus going to Port-de-Paix and Port-au-Prince and his wife and children going to Latiti, on the outskirts of Saint-Marc. The kidnappers continued to look for Marcelus and told his neighbors they needed to kill Marcelus because he had identified them. The kidnappers said that if they could not find Marcelus, they would take his children. Marcelus lived in hiding for six or seven years, before leaving Haiti entirely.

The IJ and the BIA gave specific, cogent reasons for discrediting Marcelus's testimony, and those reasons are supported by substantial evidence. In particular,

4

the IJ and the BIA noted that: (1) Marcelus's asylum application stated that he had lived at the same address in Saint-Marc from 1993 to 2011, but Marcelus testified that he lived in hiding in Port-au-Prince and Port-de-Paix from 2005 to 2011; (2) although Marcelus claimed he was in hiding from 2005 until 2011, his application stated that he continued to work in Saint-Marc as a bus driver during that period; (3) the court clerk's report that Marcelus submitted to corroborate his account did not mention his sister's murder, an omission Marcelus could not explain; and (4) while Marcelus's application emphasized his membership in an anti-Lavalas political group, he never mentioned the political group during his testimony, and the court clerk's report indicated Marcelus was merely a victim of a crime and did not suggest any other reason for the attack. All of these reasons find support in the record.

Moreover, the record does not compel a finding that Marcelus is credible. Marcelus argues that he offered an explanation for one of the identified inconsistencies (about his residences between 2005 and 2011). A tenable explanation, however, does not compel us to overturn the IJ's credibility determination. See Chen v. U.S. Att'y Gen., 463 F.3d 1228, 1233 (11th Cir. 2006); see also Lyashchynska, 676 F.3d at 967 ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (quotation marks omitted)).

5

The reasons for discrediting Marcelus are supported by substantial evidence, and Marcelus does not contend that the other evidence in the record, absent his discredited testimony, compels a conclusion that he was, or likely will be, persecuted in Haiti.[3]

**PETITION DENIED.**

---

[3]We, like the BIA before us, note that even if Marcelus's testimony had been credited, it would not have shown statutory eligibility for asylum.  Marcelus's testimony showed only that he was a victim of criminal activity and feared the perpetrators would retaliate against him because he had reported the crime to authorities, which is insufficient to demonstrate either past or future persecution on account of a protected ground.  See, e.g., Cendejas Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310 (11th Cir. 2013); Castillo-Arias v. U.S. Att'y Gen., 446 F.3d 1190, 1198 (11th Cir. 2006); Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258 (11th Cir. 2006).